UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT ROGAN,

       Plaintiff,

v.                                    Case No. 25-cv-12443
                                          HON. MARK A. GOLDSMITH

CHATEAUFORT PLACE COOPERATIVE, INC.,

       Defendant.

_____/

## OPINION & ORDER DENYING DEFENDANT'S MOTION TO DISMISS (Dkt. 7)

Plaintiff Robert Rogan filed this lawsuit against his cooperative, Defendant Chateaufort Place Cooperative, Inc. alleging that it failed to provide a reasonable accommodation, made discriminatory statements, and retaliated against him for his hoarding disability in violation of the Fair Housing Amendments Act (FHAA), 42 U.S.C. § 3601 et seq. and Persons with Disabilities Civil Rights Act (PDCRA), Mich. Comp. Laws § 37.1101 et seq. See Compl. (Dkt. 1). Before the Court is Chateaufort's motion to dismiss (Dkt. 7). For the reasons that follow, the Court denies Chateaufort's motion.[1]

### I.  BACKGROUND

Rogan's complaint alleges the following facts. Rogan has a hoarding disorder and has lived in unit 1905 at Chateaufort since 1999. Compl. ¶¶ 2, 34. He has mobility issues and has used a walker to move around since 2020. Id. ¶ 39. Because of his mobility issues he also uses a bedpan. Id. ¶ 40. In 2023, Rogan sustained a neck injury where he laid on the floor for four days

---

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). The briefing includes Rogan's response (Dkt. 9), Chateaufort's reply (Dkt. 10), and Rogan's sur-reply (Dkt. 17).

1

before emergency services personnel (EMS) responded.  Id. ¶¶ 41, 43.  While EMS was in his home responding to his neck injury, his bedpan was accidentally kicked over "resulting in a biohazard."  Id. ¶ 44.

As a result of his neck injury, Rogan was hospitalized and in rehabilitation for three months. Id. ¶ 46.  During that time, Chateaufort gained access to Rogan's unit and "discovered its nature and condition."  Id. ¶ 45.  Chateaufort hired two vendors to "remediate" Rogan's unit.  Id. ¶ 46. The vendors boxed up all of Rogan's possessions and cut-out the portion of carpet where Rogan's bedpan was spilt but they did not replace the carpet.  Id. ¶¶ 47–49.

On February 14, 2025, Rogan received a notice from Chateaufort regarding "continuing violations of the Cooperative's Governing Documents."  Id. ¶ 53 (punctuation modified).  His violations included: "(1) unsanitary housekeeping, (2) clutter, (3) cluttered yard conditions, and (4) miscellaneous loose items in the unit that impede free movement, obstruction to stairway access, windows, vents, exits, entryways and passageways."  Id. ¶ 54.  On March 19, 2025, Chateaufort sent Rogan a Notice to Quit that directed him to vacate his unit by April 19, 2025.  Id. ¶ 55.  The market value of Rogan's unit share is at least $400,000 and vacating his unit would mean that Rogan would forfeit his unit share of $400,000.  Id. ¶¶ 1, 56.  On April 25, 2025, Chateaufort filed a complaint in state court for summary proceedings to terminate Rogan's occupancy.  Id. ¶ 57.  On May 29, 2025, a landlord-tenant judgment was entered.  Id. ¶ 62.

On July 8, 2025, Rogan's neighbor Dr. Tyra McKinney, M.D. filed an emergency petition for guardianship and conservatorship for Rogan.  Id. ¶ 63.  A hearing was held on July 14, 2025 where after Dr. McKinney was appointed Rogan's guardian.  Id. ¶ 65.  Also in July, Rogan was evaluated by a licensed master social worker who diagnosed Rogan with a Hoarding Disorder and an "unspecified Adjustment Disorder."  Id. ¶ 67.

Rogan made two requests, which he characterizes as reasonable accommodations.  Id. ¶¶ 74, 78.  The first was on June 13, 2025 when Dr. McKinney submitted a petition, signed by the requisite 20% of the Cooperative members to Chateaufort's Board, requesting a special meeting be called for members to vote on whether to grant Rogan a reasonable accommodation.  Id. ¶ 74. Dr. McKinney characterized the reasonable accommodation as:

> [D]elaying enforcement of the current judgment and ent.er [sic] a consent judgment to stay further eviction proceedings, or, if necessary, re-admit Robert Rogan, in light of the following: 1) the total clean-up of Unit 1905 Orleans and remediation of the conditions cited by the Chateaufort Place Cooperative, Inc. in its eviction proceedings; and 2) [a]ppointment of a guardian and conservator for Mr. Rogan to ensure maintenance of a healthy and safe living environment accountable to Chateaufort Place Cooperative, Inc.'s rules and regulations set forth in the Occupancy Agreement, By-Laws, and other publications for members.

Id. ¶ 74 (punctuation modified).

Rogan's second reasonable accommodation request was made on June 30, 2025.  Id. ¶ 78. Rogan describes his reasonable accommodation request as:

> My unit, Unit 1905 be cleaned (by removal of all boxes, a pathway created to allow passage, and entry of all of the rooms by July 7, 2025 [and] a guardian and conservator be appointed for me to ensure continued maintenance of a healthy and safe living environment and accountable to Chateaufort Place Cooperative Inc.'s rules and regulations as set forth in the Occupancy Agreement, By-Laws, and other publications for Members.

Id. ¶ 78 (punctuation modified).

Rogan's counsel "clarified" his reasonable accommodation request on July 9, 2025.  Id. ¶ 80.  His clarified request was that he be able to continue his "membership and residence in Unit 1905 [], without limitation" because his "unit has already been brought back into full compliance (as evidenced by a private inspection)" and he has "begun the process of obtaining guardianship/conservatorship to ensure that [his hoarding] does not become a problem again."  Id. (punctuation modified).

Chateaufort denied Rogan's reasonable accommodation request by email on July 9, 2025. Id. ¶ 81. Chateaufort explained that the request was "unreasonable" because the fact that his unit is now clean "does not ensure that [Rogan's] continued occupancy with his medical hoarding condition will comply with the cooperatives [sic] rules and regulations." Id. (punctuation modified). Chateaufort was also not persuaded that an appointment of a guardian would ameliorate the problem going forward. Id.

## II.   ANALYSIS[2]

"The FHAA makes it unlawful to 'discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap.'" Anderson v. City of Blue Ash, 798 F.3d 338, 360 (6th Cir. 2015) (quoting 42 U.S.C. § 3604(f)(2)). Discrimination includes "'refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling.'" Id. (quoting § 3604(f)(3)(B)). Discrimination under PDCRA parallels the language of the FHAA, so the claims will be examined together. Whiteaker v. City of Southgate, 651 F. Supp. 3d 893, 897 (E.D. Mich. 2023).

To state a reasonable-accommodation claim under the FHAA, Rogan must show that (i) he had a disability as defined by the FHAA, (ii) he requested an accommodation, (iii) the defendant refused to permit it, (iv) the defendant knew or should have known of his disability, and (v) the

---

[2] To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). The plausibility standard requires courts to accept the alleged facts as true and to make all reasonable inferences in favor of the plaintiff. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

requested accommodation was reasonable and necessary.  Hollis v. Chestnut Bend Homeowners Ass'n, 760 F.3d 531, 541 (6th Cir. 2014).

Chateaufort argues that Rogan failed to state a claim under the FHAA and PDCRA because his complaint does not allege "an accommodation request[] that relates to any rule, policy, practice, or services" of Chateaufort.  Mot. at PageID.114.[3]  Chateaufort explains that Rogan's accommodation requests are insufficient to state a claim because they (i) were made before his actual diagnosis of his hoarding condition and (ii) they were made after his eviction proceedings were concluded, so they cannot undo the state court's verdict.  Mot. at PageID.114–121.

The Court disagrees and finds that Rogan's complaint states reasonable accommodation claims under the FHAA and PDCRA.  Rogan's accommodation requests are basically requests for a second chance.  Compl. ¶ 80.  He states that his unit is now in compliance with Chateaufort's governing documents and that he is in the process of obtaining a guardian to prevent his hoarding from becoming an issue again.  Id.  Courts have recognized "second chance" accommodations and found them reasonable where the disabled individual obtains treatment and no further incidents occur.  See e.g., D.J. v. Columbia at Sylvan Hills, L.P., No. 19-02232, 2019 WL 10984475, at *4–5 (N.D. Ga. July 25, 2019) (granting plaintiff's preliminary injunction after finding she had shown a likelihood of succeeding on the merits in her accommodation request to stay in her dwelling); Super v. J. D'Amelia & Assocs., LLC, No. 09-831, 2010 WL 3926887, at *6–8 (D. Conn. Sept. 30, 2010) (finding plaintiff alleged sufficient facts to "support a finding that her request to continue receiving Section 8 benefits while she sought court-ordered psychiatric care was a reasonable accommodation"); Sinisgallo v. Town of Islip Hous. Auth., 865 F. Supp. 2d 307, 342 (E.D.N.Y.

---

[3] Chateaufort makes no arguments related to Rogan's retaliation and discriminatory statements claims under the FHA and the PDCRA, so those claims proceed.  Compl. ¶¶ 27, 113–120.

5

2012) (granting a preliminary injunction to a mentally disabled plaintiff who attacked another tenant and later proposed a reasonable accommodation of a probationary period to show that changes to her medication would prevent her from being a danger to her neighbors' safety). Accordingly, Rogan's request to stay in his now compliant unit with the appointment of a guardian is sufficient to show that he requested an accommodation.[4]

Without citing any authority, Chateaufort's next argument is that Rogan's requested accommodation is insufficient to state a claim because it was made before he received his hoarding diagnosis. Mot. at PageID.114. Rogan's accommodation requests occurred on June 13 and 30, 2025 and his clarification from counsel occurred on July 9, 2025. Compl. ¶¶ 74, 78, 80. Rogan received his hoarding diagnosis on July 14, 2025. Id. ¶ 67.

The FHAA defines "handicap" as "a physical or mental impairment which substantially limits one or more of a person's major life activities." 42 U.S.C. § 3602(h)(1). The statutory definition does not state that an individual must have a formal diagnosis. The Sixth Circuit has found that the housing provider "is entitled to seek information from an allegedly disabled person in order to establish the existence of the disability and the necessity of the accommodation." Overlook Mut. Homes, Inc. v. Spencer, 415 F. App'x 617, 621 (6th Cir. 2011). Chateaufort would have been within their rights to ask for additional information related to Rogan's disability but the fact that Rogan did not obtain a formal diagnosis until after his accommodation request is of no consequence to his claim.

---

[4] Chateaufort also asserts that Dr. McKinney's request to hold a special meeting is not a reasonable accommodation. Mot. at PageID.115–116. But the petition is not the accommodation—as explained in the June 30 request and the July 9 clarification, Rogan seeks the ability to stay in his unit with remedial measures in place to ensure that it does not become out of compliance again.

Chateaufort's last argument is that Rogan's claims in this case are "essentially an appeal of a district court's order granting a judgment of possession" which is barred under the Rooker-Feldman doctrine.  Mot. at PageID.117; Reply at PageID.200–202.  But, as Rogan points out, the instant case is not appealing the state court's judgment of possession because Rogan prevailed in state court.  Sur-Reply at PageID.349–350.  Rogan appealed the state court's judgment of possession and the state appeals court vacated the order of possession and remanded the case for further proceedings.  9/30/25 Op. and Order of the Third Judicial Circuit Court for the County of Wayne at PageID.359–364 (Dkt. 17-2).  Then the parties stipulated to dismiss the state court case.  12/15/25 Stip. Dismissal Order at PageID.366 (Dkt. 17-3).

### III.    CONCLUSION

For the reasons explained above, the Court denies Chateaufort's motion to dismiss (Dkt. 7).

**SO ORDERED.**

Dated: June 23, 2026          s/Mark A. Goldsmith
Detroit, Michigan            MARK A. GOLDSMITH
                             United States District Judge

### <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 23, 2026.

                             s/Joseph Heacox
                             JOSEPH HEACOX
                             Case Manager

7